**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:11CV-00108-JHM**

**TYLER KELLEY**                                                                                    **PLAINTIFF**

**V.**

**TENNESSEE VALLEY AUTHORITY**                                             **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant Tennessee Valley Authority for summary judgment [DN 29].  Fully briefed, these matters are ripe for decision.

**I.  STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

The Tennessee Valley Authority ("TVA") is charged with "advanc[ing] the national defense and the physical, social and economic development" of the Tennessee Valley region, including providing electric power to the residents of the region through the Tennessee Valley Authority Act of 1933. 16 U.S.C. §§ 831-831ee (2006 & Supp. V 2011). Paradise Fossil Plant is operated by TVA in Muhlenberg County, Kentucky and produces electric power using three coal fired units. Each unit consists of a scrubber, a systematic catalytic reduction system ("SCR"), a powerhouse and a boiler. The SCR is a means of controlling nitrogen oxide emissions into the environment and, as a by-product of this system, fly ash particles accumulate in the ducts.

In the fall of 2010, TVA hired MPW Industrial Service, Inc. ("MPW") to perform fly ash removal at the Paradise Plant. Plaintiff was an employee of MPW. The contract between TVA and MPW required MPW to obtain workers' compensation benefits, as well as provide all the manpower, tools and equipment. On October 29, 2010 Plaintiff was removing fly ash from Unit 1 at the Paradise Plant when a large section of fly ash fell, causing Plaintiff serious burns to his body. As a resident of Ohio, Plaintiff received benefits under Ohio's Workers' Compensation.

Plaintiff filed his Complaint in September of 2011 alleging that TVA, its agents, servants and employees were negligent, careless, breached the duty of ordinary care, and violated mandatory state and federal statutes applicable to the removal of fly ash. Additionally, Plaintiff alleges that TVA,

its agents, servants or employees were negligent in implementing TVA's policies and procedures. Defendant moves for summary judgment stating that Plaintiff's claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act. Defendant argues that it is a "statutory employer" within the provisions and definitions in KRS § 342.610(2)(b) and KRS § 342.690. In response, Plaintiffs contend that TVA was not the statutory employer of Plaintiff because Plaintiff was not performing work that is a regular or recurring part of the business of Defendant.

### III. DISCUSSION

KRS §342.690(1) provides that if an employer secures payment of workers' compensation under Chapter 342, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer . . . ." For purposes of this section, "the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation." Granus v. North Am. Philips Lighting Corp., 821 F.2d 1253, 1257 (6th Cir. 1987) (citing KRS § 342.690). KRS §342.610(2) provides in part as follows:

> A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. . . . A person who contracts with another: . . .
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person
> shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. . . .

KRS §342.610(2).

"The purpose of the provision of KRS 342.610 that a contractor is liable for compensation

benefits to an employee [of] a subcontractor who does not secure compensation benefits is to prevent subcontracting to irresponsible people." Fireman's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 461 (Ky. 1986). By the same token, "if a defendant qualifies as a contractor, 'it has no liability in tort to an injured employee of a subcontractor' once worker's compensation benefits are secured." Giles v. Ford Motor Co., 126 Fed. Appx. 293, 295 (6th Cir. April 4, 2005)(quoting Fireman's Fund, 705 S.W.2d at 461). Essentially, "the Act treats the employees of a subcontractor as *de jure* employees of the contractor for the purposes of guaranteeing worker's compensation benefits." Giles, 126 Fed. Appx. at 295.

The issue presented in this case is whether the work being performed by Plaintiff, as an employee of MPW, was a "regular or recurrent" part of Defendant's business under KRS § 342.610(2)(b). As stated previously, KRS § 342.610(2)(b) provides that a contractor is one who contracts with another "[t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." KRS § 342.610(2)(b). Under Kentucky law, "recurrent" simply means occurring again or repeatedly. Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 924 (Ky. Ct. App. 1996); Pennington v. Jenkins-Essex Constr., Inc., 238 S.W.3d 660, 664 (Ky. Ct. App. 2006). "Regular" generally means customary or normal, or happening at fixed intervals. Id. See also General Elec. Co. v. Cain, 236 S.W.3d 579, 588 (Ky. 2007)("It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.").

The courts in both Kentucky and the Sixth Circuit have consistently held that routine repairs

and maintenance projects are a "regular or recurrent" part of business operations. Granus, 821 F.2d at 1257 (rebricking of a tank furnace used at glass factory was a regular and recurrent part of defendant's glass making business); Burroughs, 2008 WL 5192237, *5 (contractor's repair of pipes used to distribute defendant's product was a regular and recurrent part of defendant's business); Thompson v. The Budd Co., 199 F.3d 799 (6th Cir.1999) (holding that the maintenance of heating, ventilation, and cooling system at an automobile parts stamping facility was regular and recurrent part of business); Murphy v. Louisville Gas & Electric Co., 2007 WL 3231550 (W.D. Ky. October 30, 2007) (contractor's preventive maintenance at defendant's power plant was a regular and recurrent part of defendant's business); Franke v. Ford Motor Co., 398 F. Supp. 2d 833, 839 (W.D. Ky. Oct. 31, 2005) (contractor's installation of a new type of lift table at defendant's automobile manufacturing plant was a regular and recurrent part of business); Daniels, 933 S.W.2d 821 (finding that EPA emissions tests performed by contracted experts nine times per year were a regular part of LG & E's business); Hosack v. Grayson Rural Electric Co-op, 2004 WL 2482609 (Ky. Ct. App. Nov. 5, 2004) (maintenance of power line of electric company is regular and recurrent part of work of electric company). See also Himes v. United States, 645 F.3d 771, 781 (6th Cir. 2011)("Such maintenance work on an employer's physical plant is classified as a matter of law to be a regular and recurrent part of the employer's business.")). In each case, the court held that the maintenance and repair work constituted work of a kind which is a regular or recurrent part of the hiring company's business, and therefore, the hiring company was deemed a contractor pursuant to KRS § 342.610(2)(b).

Contrary to Plaintiff's argument that TVA did not have the manpower to conduct fly ash removal during scheduled outages, "[e]ven though [a Defendant] may never perform that particular

5

job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." Fireman's Fund, 705 S.W.2d at 462. See also Blasko v. Mercy Health Partners-Lourdes, Inc., 2010 WL 5018168, *4 (Ky. Ct. App. Dec. 10, 2010); Black v. Dixie Consumer Products LLC, 2010 WL 497668, *6 (W.D. Ky. February 5, 2010); Burroughs v. Westlake Vinyls, Inc., 2008 WL 5192237, *4 (W.D. Ky. Dec. 11, 2008); Franke v. Ford Motor Co., 398 F. Supp. 2d 833, 839 (W.D. Ky. Oct. 31, 2005); Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 823 (Ky. Ct. App. 1996). Therefore, the fact that Defendant previously performed the work, but currently subcontracts the work to others is a "distinction ... of no significance" under the statutes. Granus, 821 F.2d at 1257. In the case at present, Defendant scheduled planned outages of the units on a regular basis in order to conduct maintenance, including the removal of fly ash. (TVA's Verified Interrogatory Responses, p. 5 [DN 29-2].) Even though TVA employees with the required safety training could perform the fly ash removal, a large amount of work is required to take place during the outages, and Defendant relied on contract labor to accomplish all of the maintenance. (Id. [DN 29-2].) The removal of fly ash from the SCR was a maintenance project which is a "regular or recurrent" part of Defendant's business operations

The Court also rejects Plaintiff's argument that because the work was hazardous, it was not "regular or recurrent." Plaintiff states that the TVA Safety Manual required a permit to enter the confined spaces of the ducts and in order to obtain a permit, confined space entry training is required. However, all TVA employees received training for permit-required confined spaces annually and TVA required MPW employees to also have the confined space training. (Depo. Mitchell Cundiff, 19-20, 26 [DN 30-1].) Regardless, the fact that there are recognized hazards to a task, does not have an effect on whether it is a "regular or recurrent" part of TVA's business

operation. Several of the cases discussed above involved construction work, maintenance of power plants, installations of heavy equipment in an automobile plant, and maintenance of power lines, all of which involve inherent dangers. Additionally, in <u>Daniels v. Louisville Gas and Elec. Co.</u>, a trained expert was contracted to conduct emissions testing of LG&E's coal-fired generators. 933 S.W.2d 821 (Ct. App. Ky. 1996). In determining whether LG&E was a contractor, the Court of Appeals held that "[i]t is clear that LG&E has been required to perform the testing in the past, it will be so required in the future, and it contracts with specialists to perform the services," therefore the testing was regular and recurrent, regardless of the plaintiff's specialized training. <u>Id.</u> at 825. Required safety training or exposure to possible hazards are not factors in determining whether maintenance projects are a "regular or recurrent" part of business operations.

Having concluded that TVA contracted with MPW to perform "work . . . of a kind which is a regular or recurrent part" of TVA's business, TVA is deemed to be a contractor within the meaning of the Kentucky Workers' Compensation Act. Thus, Plaintiff's complaint is barred by the exclusive remedy of workers' compensation, and the Defendant's motion for summary judgment is granted.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant for summary judgment [DN 29] is **GRANTED**. The Court will enter a Judgment consistent with this Opinion.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

November 27, 2012